18-19, Loabat Amiri et al. v. Dept of Homeland Security et al. Oral argument, 15 minutes per side. Ms. Cardinale for the Plaintiff's Appellant. Good morning, Your Honors. May it please the Court. I am Caridad Pastor Cardinale and I am here on behalf of all the appellants. If it pleases the Court, I wish to reserve three minutes for rebuttal. In this case, the District Court erred in finding that this is a consular non-reviewability case. It failed to consider the reviewability of the actions of the other defendant agencies whose actions are reviewable under the Administrative Procedures Act. Determinations regarding inadmissibility based on terrorism grounds are made by the Department of Homeland Security pursuant to the Homeland Security Act of 2002. They are not made by a consular officer. Furthermore, the appellants are not asking the Court to review the inadmissibility determination or to substitute its judgment for that of any of the agencies. Rather, the appellants are simply asking for information, whether in a specific, general, in camera, in summary, in whatever format, so that they may continue to pursue the immigrant visa matter for Appellant Lateef or to apply for a waiver, which is available under 8 U.S.C. 1182, parenthesis A, parenthesis 3, parenthesis B, parenthesis Roman numeral VI. Can I? I'm sorry to interrupt you. So you did a nice job of laying out in your brief the injury in fact, but what I stumble on withstanding, and I just want to take you back a step, but you brought this up, is the redressability. So you just brought up the relief you're seeking. And as to Dr. Amiri, am I pronouncing that correctly? Yes, you are. Okay, as to Dr. Amiri, it seems to me her injury, as you describe it, is the same injury that was laid out in Trump v. Hawaii, which is the separation, in essence, from a loved one. And how is the information that you're asking for tied to that? In other words, how does it make it? How is it redressable? Well, Your Honor, we believe that if we are to receive some information, that would lead the appellants to be able to counter that or provide, like I said, request for a waiver. But for redressability, I'm sorry to interrupt again, but for redressability, don't you have to have likelihood of success? In other words, doesn't it have to make it likely? And what you're saying is, I'll get information, and with that information I'll be able to show the government they're wrong, in essence. But the government, there's no requirement that the government accept it or that we know what the information is and we can say, without a doubt, the government's going to have to do it, right? So is there any case law that would say that's sufficient for redressability of a different injury, which is the separation? I think, Your Honor, we're not saying in the absolute if we get the information it will be granted. There is a discretionary factor. We are saying that if we get the information, then there is a high potential of having the injury redressed. It doesn't have to be an absolute, and I don't think Hawaii held that it had to be an absolute. If we obtain the information, then we know. We need to apply for a waiver on this basis, or we need to show that he didn't know, because right now we don't know if it was. Isn't that too many ors or ifs? If we get this and if this happens and if this happens, that's where redressability says, look, you've got to tie it back. That's what the courts have said. As soon as you stick an if, it sounds like it's not redressable. I understand your point, Your Honor. Again, there's no absolute, but I think... You're making a procedural argument, though, right? I'm sorry? You're making a procedural standing argument. Yes. I'm sorry. What do you mean? How are you making a procedural standing argument? What's your injury in fact that's procedural? The fact that not having the information is injuring the client, and then we go to the substance of which is keeping them apart. Okay, so that's different than the Trump v. Hawaii injury that you point to in your brief, and I didn't see that in your complaint, nor do I know, is there a case that says lack of having information from the government is injury in fact? No, there is not. Okay. All right. In Justice Kennedy's case... Sorry to interrupt your pause. I took the way you laid out the argument as rejecting consular non-reviewability because other agencies are involved. Is that the argument? That is the argument for why this is not a consular reviewability case, but we've also said in the alternative... Well, I don't understand that argument. You're not just going on to another argument, or do you want to defend that argument? I don't understand how that argument could possibly be. You have a doctrine that this kind of decision is not reviewable, which is not a jurisdictional doctrine or a standing doctrine. It's a non-reviewability. You don't have a cause-of-action kind of doctrine, in my understanding. I don't see how that non-reviewability or absence of a cause-of-action can be circumvented just by saying, well, they defer to some other agency when they make this decision, or it's another agency that's making the decision. How does that undermine the logic of it not being reviewable? Because agency action is reviewable under the Administrative Procedures Act. It is reviewable unless it's not reviewable, and you can cite the Administrative Procedure Act in any one of these consular non-reviewability cases, and they would just take you to the 701 where it says, I don't know whether it's committed to agency discretion by law or it's precluded by law, but it's treated as non-reviewable. Are you saying in any case where non-reviewability is argued, you can just use the APA to sue? No, I'm not, Your Honor. Well, then the APA doesn't help you. You've got to have some reason why this doesn't apply, and you say, well, it's a different agency. Does that make sense? I'm not seeing how it makes sense. You have to tell me how that makes sense. In consular decision cases other than inadmissibility based on terrorism, the consulate does make the decision. They determine whether there's sufficient evidence for marriage fraud. They determine any other admissibility, except when it comes to terrorism grounds. That's in the exclusive purview of the Department of Homeland Security. Why does that make any difference under the doctrine? Well, Your Honor. It also may be done on Fridays instead of Wednesdays. I don't know. Those aren't differences that seem to make a difference. Well, Your Honor, we believe that it does just because it's not. Why? Because the actions of the Department of Homeland Security are reviewable, and that is their action. But not when they're denying visas. If the denial of a visa for a foreigner trying to get into the United States is non-reviewable, what difference does it make what agency of the government is denying the visa? I mean, it's a formal difference, but I'm not seeing how it's a difference under the theory of consular denials of visas. That's consular acts on behalf of the government. The government's denying the visa. It's not reviewable. The whole idea is that it's in the sovereign power of the country to keep non-citizens out for whatever reason they decide to do it, as long as they cite the statutory basis for it. That's the way it appears to be in the cases. I'm just trying to see why it should make a difference that it's a different agency. I'm taking your answer to be, well, it's just different. Is there a basis or a theory for the difference? The theory that we have is that it is a separate department. The consular officers do not have a role in making that decision. A different way of asking what Judge Rogers is, why is the consular somewhat special? Because if you look at where consular non-reviewability came from, we're looking at the Dinh case. If you go to the case Dinh's relying on, we're talking about Mandel. Mandel doesn't use the word consular non-reviewability. In fact, it says, the court said, and I'm quoting, we hold that the executive exercises this power negatively on the basis of a facially legitimate and bona fide reasons. The courts will neither look behind the exercise of that discretion nor test it. What Judge Rogers is saying is, look, this is the executive branch, and what this is, consular non-reviewability is really a term for executive discretion in this area. When they give a legitimate and bona fide reason, we don't test it. Why aren't we bound by that in the language of Mandel? That's still good law, right? Yes, that is. But then that would mean that no executive agency would ever, their actions would never be reviewed. Their actions are reviewable. Just their actions in denying visas aren't reviewable. Right. This is only related. Mandel, as Judge Rogers just pointed out, related to visas, of course. But even in Mandel. It would mean that whoever, on behalf of the government, has the power to deny a visa and denies it doesn't get it reviewed in court. But, again, Mandel set the limit. Even though they are restrictions, you still have to have a facially legitimate and bona fide reason. That's a different issue. I thought you were arguing because it was a different agency. Now you're arguing regardless of the agency, you have a fallback argument. Right, exactly. And the alternative. Proceed with that, then. I have a question. I understood your argument to relate to the nature of consular non-reviewability. And the nature of it being that it requires an exercise of discretion. And the challenge to that, the appropriate challenge, is an exercise in bad faith. But in the case before us, I understood your argument to be that there is no discretion at all because this is based on being placed on a database. And there's no consular discretion that can be traced. It's a black box. Is the doctrine, under your argument, related to the fact that you have to have the ability to have exercised some discretion such that there is the appropriate challenge under the doctrine to bad faith, and a database is a black box of no reasons at all? That is correct, Your Honor. And if that's the case, then, is your argument that consular non-reviewability is just inapplicable because we have a double level of database listing? Help me understand whether we are saying consular non-reviewability really doesn't apply. In this circumstance, because we live in a new world now, in which things are based on a database, we know here that the suggestions to one of these databases, like 99% of them, are accepted. You want to put them on this ETECS, or I've forgotten the acronym for the other one. Is that, then, the presence on that database the decision? Yes, Your Honor, and that's why we're saying it's a reviewable doctrine. Can that be right under the statutory language? I mean, don't we have to pay attention to the language of the statute? Yes. And the language says, it appears, I'm using the language of this statute, it appears to the consular officer, if the consular officer knows or has reason to believe such alien is ineligible. So nothing in this prohibits the consular officer from rejecting it. It's up to the consular officer. They could say, yeah, you're on that list, but I have all this other information that contradicts that, and so I know that list is wrong because Jack Smith, there's seven Jack Smiths and you're not that Jack Smith, so I'm going to give you a visa. They're exercising discretion there, and they're permitted to do that under this statute. And I'm quoting 1182. I understand that, Your Honor, but when they are on a database, the consular officer can't go back and see how they got on the database, and that's what we're asking. But they can reject the database. There's nothing that requires, there's no shall here. It says, if they decide. So it appears to the consular officer, so it's up to them. And the consular officer knows or has reason to believe. I mean, that's all about the consular officer. It is about the consular officer, but when we filed the complaint, we also showed that the consular officers have no discretion when it involves a terrorism case. That's how it's done in practice. The statute may say that, but that's how it's done. So let me ask a follow-up to that. Would we have to disregard what the Supreme Court said in Din, and I'm talking about Justice Kennedy, when he said, a citation to this is enough to make it beyond the court's review? No, we do not. I believe that Din is distinguishable from this case. In Din, Justice Kennedy said the citation has to be facially legitimate and bona fide. Right, that's just the Mandel language we were talking about. Right, and they used that. Justice Kennedy used that in Din. In Din, he said that Mrs. Din and her husband had admitted that he had worked for the Taliban, so that there was some knowledge there. But if you look at 2419, and I'm sorry to interrupt you, Justice Kennedy reiterates, he says, and I'm quoting, respect for the political branch's broad power over the creation and administration of the immigration system meant that the government need provide only a statutory citation to explain a visa denial. I'm sorry, and that's from Trump quoting Justice Kennedy in Din. And so what Trump says, and there's five justices saying it, is once you provide the statutory citation, it's beyond the purview of the courts. And I think, you can correct me, but I thought that was five of them, which means it's not even, we don't even have to go through the Marks inquiry. Justice Kennedy also said that a groundless decision might not comply with the facially legitimate and bona fide reasons, and held that that was not the case in Din because her husband had conceded that he worked for the Taliban. In our case, we have absolutely no information at all. The appellants have not worked for any terrorist organization. They're not affiliated with any terrorist organization. And unlike Din, where she was asking for a more specific explanation, even though she knew that her husband worked for Taliban, we're asking for some information in any form. It doesn't have to be detailed. It doesn't have to be specific. Just some information. Is it coming from a database? Something that we can then look at and say, okay, now we know how to proceed. Is there something in the record that establishes that presence on the database is an automatic and mandatory denial?  Is there anything in the record that suggests the 2009 decision in Din has been that the database situation has changed to the 2013 denial in this case? Do we know that there's been a change in the database methodology? Is there anything in the record that addresses that? There isn't, but in the Din case, again, they had knowledge of what he had done, so it wasn't a database issue as where this one is, we believe, a database issue. And do you think it is your argument that there is no case that has been addressed in which the entire determination is based on presence on a database? Yes, Your Honor, that is. Din's 2015, right? Not 2013 or 2009? Yes, 2015. The Visa denial. Right, but the case, the Supreme Court decided it in 2015, right? Okay, I'm just making sure my memory is in full. Can I ask a couple questions? I know, first, I'd like to ask a couple questions. I know your time is up and it won't, I assume, count against your vote. Oh, no, it won't. Go ahead. I took Judge Strach's questioning to be along a slightly different line from Judge Tapar's questioning. And I took Judge Strach's questioning to infer that you are arguing that what differs, how this case differs from Din and Kleindienst versus Mandel is that there's some kind, there's non-discretion because there's some kind of flat rule that you have to follow which takes it out of discretion. Is that an argument you're making or not? That is part of it. Can you tell me where in your brief you argue that? Because I didn't, I mean, I read the brief. I admired your brief, especially with respect to your focusing on certain issues and not getting into other issues so that that narrows the issues we have to look at. Right. But I didn't see that argument. Is that in there? Well, we argued for the information in the database. We did not argue for that. Information, but that's not the same thing as an argument about this doesn't get consular immunity or whatever the executive immunity in the visa area immunity, not immunity either, unreviewability. Okay, I'm speaking too freely. Visa unreviewability. You're not challenging visa unreviewability on the ground that it's automatic. No, I'm not. You just want to know some more information so that you can get review of it. Right, and I believe I said we didn't know. And what's the basis then for your request that you have a right to other information? What is the ground upon which you make that claim? The fact that a consular's decision has to be facially legitimate and bona fide, and without any information, we don't know. We don't have the whereabout for anyone to determine whether it's facially legitimate and bona fide because we don't have, unlike all the other cases cited, information that says what the person did and whether they were looking for either more information. Everybody knew what the grounds were. It's not so in this case. And additionally, the waiver provision of the specific statute says that a person has the ability to show that they didn't know or should not have reasonably known. We can't even go to that and apply for that waiver because we don't know what it is we should not have known. And I have one final question. I also admired your saying that you were no longer arguing Ms. Amiri's right to travel. We appreciate that kind of candor and limiting. What about Lateef's right to travel? Are you even arguing that as opposed to getting a visa? No, we're not arguing his right to travel. Okay. Thank you. Thank you, Your Honor. You'll have your rebuttal time. Your Honor, may it please the Court? Aaron Goldsmith on behalf of the government. I'd like to talk a little bit about consular non-reviewability. Again, to be clear, the allegation is that if the government, State Department, provided more information as to the basis of the visa denial, they would be able to convince the government to grant them a visa. And this just goes to the core of the doctrine of consular non-reviewability. That is, the doctrine bars not only the decision itself, but also governs how much information the government is required to provide. And Justice Kennedy made clear that to the extent that a U.S. spouse has any claim, the government fulfills whatever obligation they might have simply by citing the statute. In that case, it was 1182A3B, the exact same statute. What about your friend's point? I'm sorry to interrupt you. What about your friend's point that in every one of those other cases, there was more information than just a statutory cite? So let me address that. With respect to Kerry v. Dinn, the plaintiff came forward and said, I think the reason my husband was denied a visa was because he worked for the Taliban government. The government never confirmed or denied whether that was true. There was no conveyance of that information in any form in Dinn. The Taliban issue arose from the plaintiff, and nothing provided by the department, the denial letter, information directly from a consular representative, none of that came from the government. And the record reflects that. I believe if you look at the opinion, and I don't know about what's outside the four corners of the opinion. I believe that's correct. And if you look at Justice Breyer's dissent, he specifically says, we have no way of knowing what the basis of the denial was. We don't know if it was because he worked for the Taliban government or if it was for some other reason. So that was a situation in which the plaintiff came forward and said, this is the reason.  Whether that is in fact, when someone comes forward and says, this is the reason I think the visa application was denied, the general response is we neither confirm or deny that that is the case. So, I mean, I think that's, this case is very similar to Kerry v. Dinn, because also in that case, the plaintiff was saying, if you just provide more information, I can convince the consular officer. In that case, there was also an allegation that they were. I'm not convinced that redressability requires you to say that you could be successful. I think the question here is, is the relationship between the consular non-reviewability and the very fact that it's based on the right of the government to choose to exercise its discretion. And the way to challenge that is to say, you exercise that discretion in bad faith. And I think the law recognizes that concept. I'm struggling with what happens if we have reached a technological stage that there is a database that's created by the same agency. I don't want to get into the fight between agency issues. But it's a black box. No one knows how the database is, or at least no one shares, or it's two levels up. And then the way consular discretion is exercised is to be bound by presence on a database. I'm struggling with how that works with the whole concept of consular non-reviewability. It seems to me that you have to have a human exercising discretion somewhere with knowledge of facts in order to claim that that was done in bad faith. You can't say to text, okay, text database, that was bad faith. That claim doesn't exist. So educate me on how this functions. So we can see that there are statutes that provide there's no judicial review if the officer acted in discretion, for example. There are in other contexts. But that's not what we have here. There's no requirement that the consular officer actually exercise discretion. It deals with the function of the sovereign to exclude individuals and to exclude them based on confidential information. And what is the bad faith test? How can you challenge it on bad faith? So that deals with Justice Kennedy's concurring opinion. He said, I'm not... He's the man in this case, right? Right. When we cited the concurring opinion, he simply said, I'm not ruling out that there might be a situation where a plaintiff could show bad faith. He was not closing that door. He's just saying, in this case, you cited a statutorily valid basis. That's to the extent that the plaintiff had any claim. That satisfied whatever obligation the government made. So if the plaintiff alleged that they were put in the database by someone who was vindictive against them and they had particularized facts by that, could they challenge it or not under your theory? Well, there's obviously no case that deals with that point. I understand. I'm asking a hypothetical. But I think it's an open question, but I think that the best answer would be unless they could show that the consular officer acted in bad faith. The answer's no. Wait a minute. So I think both sides, at least as I understand it, Mandel talks about, and this is a majority of the court, executive discretion. Correct. So what we're really talking about is executive discretion. Justice Kennedy, let's say it's absolute after Mandel. Justice Kennedy in Dinn creates what appears to be an exception, and I think you're right to focus on that, and Judge Strange obviously is, because that's controlling under Marx, it seems to me. Am I right about that? Well, we don't even have to go into that analysis because in Trump v. Hawaii, the court cited Justice Kennedy. Okay. So we'll even accept that. So then if the bad faith portion is a test and we're talking about executive discretion, and let's just assume that the executive bases its discretion on facts that were put in in bad faith, could someone challenge that? Assume they're put in in bad faith. Your Honor, honestly, I don't know the answer to that question. Justice Kennedy, he said something a little bit more than that. He said they'd have to allege particular facts showing that. Okay. Assume they did it. I'm sorry, Your Honor, I don't have an answer to that. I just didn't think that through. But I think we're kind of— Can I ask a related question? I'm sorry. What if the government outsourced this to a private database, and so a private database indicated— text was a database that's privately run— indicates that they should be excluded, and then the consular excludes. Can they challenge that? Well, probably not because there's case law going back to the 50s dealing with the ability of the executive to exclude an individual and to do so based on confidential information. And what we're talking about, getting away from terminology, is how much information does the government have to provide to someone when they're not allowed—when they're not granted a visa or when they're not allowed into the country? And the answer is they're not— that individual is not entitled to any information based on the denial. There's a—Justice Kennedy opened the door to— there's a claim that the U.S. spouse might have, but any such claim is satisfied simply by citing the statute, 1182a3b. So that citation alone is sufficient. And is that beyond—is that because we're in text? Is that because we are in the terrorist database? Or you think that that is the doctrine that is completely overarching? Because there's a different policy behind text and the databases related to terrorism, correct? It's not necessarily related to terrorism. Text would include things like border crossings. It includes a lot of things. There was this discussion started in, I guess, paragraph 91 of the amended complaint where they talked about a text designation. Our view, there's no such thing as a text designation. It's a platform for sharing information. Quick question, is that different from the TSDB, the terrorist database? Yes, it is different. And does your answer depend upon whether you're in text, which is the sharing, and the terrorist database, TSDB? I'm sorry, can you please rephrase that? Is there a difference in your argument? You were explaining how text is just a sharing platform. So I am tying it back to the terrorist database. And I'm asking you if you can answer the question that you are answering based on the terrorist database or if your argument completely overarches any dealing with both categories in this case, which is the denial of a visa, and then the second category is the harms that resulted from this that are separate from the denial of the visa. So in this case, the only injury that's been alleged is the denial of the visa. That's the only injury that... The court below took up the visa issue and issued an order and said, now I want more briefing on these other injuries, and then he ultimately denied the other injuries on the basis that there was not standing. But that was not the visa denial. You're correct in recitation of the procedural history. We think that's where the district court went a little bit off track because the doctrine governs not only the denial itself but the information. So there was no need to provide additional briefing or get into these side issues, issues that have been dropped on appeal, I would add. The issue is a visa was denied. I understand why they want to challenge that decision, but they're not entitled to any additional information based on relating to that denial. It doesn't matter whether it comes from another agency or not. What about Judge Rogers? Sorry, Judge Rogers had a question. Thank you. I'm concerned about standing, and I also admired your brief in that it focused on the issues which I thought were your strongest issues and didn't get into some things which I candidly think are weaker, such as the lack of standing. You don't really argue standing issues in your brief, is my understanding. Not that you can waive them, but you're making judicial reviewability, cause of action kinds of arguments. Is that correct? That's correct. That's what we're focused on. That's what you're focused on. Well, I can see why you might do that, but you can explain if you want. It makes sense to do that because you've got all this precedent which supports you. Right, that's right. When you get into standing, you force us into issues like, could Congress provide this kind of relief? But Congress could, or do you not think so? Apart from separation of powers, as a matter of Article III standing, could Congress say if you get denied, you have the right to information? Maybe that would violate some kind of constitutional executive power, I suppose you could argue. Perhaps. But putting that aside. But putting that aside, yes. They could say you have to provide more information, putting aside the concern you just outlined. And that statute wouldn't be thrown out just because you haven't shown when you bring such a suit that you will win it. Well, we really didn't get into the issues of the redressability because the law is so clear under Kerry v. Dan. But you conceded in Trump v. Hawaii that consular non-reviewability is not jurisdictional, right? Meaning you, the United States. Correct. And I'm not saying one way or another. But assuming that, we have to decide the standing issue, whether you want us to or not. Don't you agree? It's jurisdictional. Is there a way around it? Well, I mean, in Kerry v. Dan, the court really didn't get into that. They just said that this is – there's just no cause of action. No, they have to decide a standing. I understand it. But I'm trying to get at why you might not be arguing that government usually makes every argument it can make to win. Here you just go past it. And I'm just speculating or trying to tease out of you why it might be that there's not a standing problem here. And it seems to me the argument might be, and you can help us because we like your advice as well as your opposing counsel. The advice might be that if standing is denied, then you're in effect saying Congress couldn't provide the kind of relief that you're saying Congress hasn't provided. So we did briefly talk about standing in the district court, but that was in the context. There were all these additional claims, and they couldn't show an injury with respect to those. But here, I mean, I think there's a straightforward issue that's a little bit different in this context than in other contexts of law, which is a foreign national just doesn't have any ability to challenge the decision to exclude the individual. And I see my time is about to expire. That sounds to me like a standing argument. The foreign national doesn't have standing, and Dr. Amiri has an injury, according to Trump, but it's not redressable, which sounds like standing. It is not redressable because for the reasons that the court has set forth in Mandel, Carrie V. Down, Trump v. Hawaii, et cetera. Judicial reviewability. Saying something is not judicially reviewable is not the same thing as saying you like standing if the thing you're challenging is not judicially reviewable. Right or wrong? I know. I'm understanding my colleague is teasing against that, but I'm just trying to get what you think about that. Okay. Not teasing, but intending. You couldn't perhaps just throw in one more thing into this beef stew. Perhaps it's that the individual, in fact, does have standing to take this case, but in Judge Rogers' words, the answer, the government has the right to say it's not justiciable. It's not. You have, there is nothing further that can be done because our doctrine says we can say no and we can not say why. I mean, that's your position. We can always say no, and we can always not say why. But I'd like to qualify since you're characterizing what I'm suggesting. I agree with that, except I wouldn't call it justiciability. I would call it lack of a cause of action. Better. Yeah, that's better. Okay. Now that we've discussed your case, would you like to continue your argument? My time has expired. I understand there's a difference of opinion on the bench on this issue. The focus, we believe, is that the case was properly dismissed. I understand there's differences in terms of the theory on why it should be dismissed. We would simply point out Cary Vauden is very closely related to these cases. In that case, the court did not need to tease out these distinctions, and that probably applies here as well. Before you sit down, I would like you to give a summary answer to my concern. We've all asked questions about it, that the determination could be made on the basis of listing on a database, the database presence on the database being the absolute determinative factor. Is it your position that if that is the way the system functions, that's perfectly appropriate? Yes, because of what the statute says. It says reason to believe. That's all that the statute says. So it does not turn on the actual application of discretion. Or the propriety of the database, or the accessibility of it, or how items get on the database. The black box is acceptable. Obviously, agencies communicate with one another and share information. There's nothing improper with that. This seems very similar to the argument that was advanced in Cary Vauden, that you're just doing something based on some database. That didn't matter to Justice Kennedy, and it shouldn't matter here. Thank you. Thank you. I have nothing for rebuttal unless the justices have any questions for me, and I thank you for your time. Thank you. We appreciate your arguments. We'll take this difficult question under advisement and issue an opinion in due course. You may call the next case.